■ NASSAU TRUST Co., Respondent, v MIDLAND MANOR HOME FOR ADULTS et al., Appellants.—In an action, *inter alia,* to recover damages for breach of a lease agreement, defendants appeal from so much of an order of the Supreme Court, Nassau County, entered May 24, 1976, as denied their cross motion for summary judgment and struck their fourth affirmative defense as being without merit. Order modified by deleting therefrom the provisions dismissing the fourth affirmative defense. As so modified, order affirmed insofar as appealed from, without costs or disbursements. A question of fact is raised, *inter alia,* by defendant Jeno Berger's affidavit in opposition to plaintiff's motion for summary judgment, as to whether the lease agreement was indeed what it purported to be or whether it was a disguised loan (see *McGalliard v Liberty Leasing Co. of Alaska,* 534 P2d 528 [Alaska, 1975]). Latham, Margett and Mollen, JJ., concur; Martuscello, Acting P. J., concurs in the result, with the following memorandum: In late January, 1975, the defendant partnership, a nursing home, through its managing partner, the individual defendant Jeno Berger, entered into a contract with a supplier, HB Electronics, for the installation of a complete telephone system and a closed-circuit television system on the partnership's premises. The contract, which is part of the record, indicates that the total price for the installation of the two systems in the nursing home was $22,750, if paid upon completion of the installation. The contract with HB Electronics further provides, in pertinent part, for an alternative method of payment, i.e., "5 year lease at 18% payable monthly with purchase option." On March 19, 1975 the defendant partner, on behalf of the defendant partnership, executed an agreement, described as a lease, with S. C. Funding Corp., plaintiff's assignor, for the rental of the above-described equipment. The agreement lists HB Electronics as the supplier of the equipment, and further provides for 66 monthly payments to S. C. Funding Corp. in the amount of $794.21 per month, for a total rental of $52,417.86. This sum represents approximately $30,000 more than the price asked by the supplier had the defendant partnership chosen to pay upon completion of the installation. On the same date, S. C. Funding Corp. procured the personal "guarantees" of Jeno Berger and the other individual defendant, his wife, Irene Berger, to the lease. On March 21, 1975 S. C. Funding Corp. assigned this agreement to the plaintiff bank pursuant to a blanket agreement between them dated April 18, 1973. The "lease" provides, in pertinent part, that in the event the lessee defaults in the payment of any rent, "the Lessor shall have the right to * * * accelerate the balance of rentals payable hereunder, thereby requiring prepayment of this lease, with all such rentals due and payable forthwith upon such notice of acceleration and demand for payment." Two rental payments were made, and the defendants thereafter defaulted. Thereafter plaintiff instituted suit, seeking, *inter alia,* the balance

of the rent due under the acceleration clause, i.e., $50,829.44. Defendants interposed an answer with four affirmative defenses. The fourth affirmative defense alleged that the lease agreement was a usurious transaction and was void in its inception. Defendants cross-moved for summary judgment dismissing the complaint on the ground that the transaction was usurious in its inception and there was no triable issue of fact. The Special Term denied the cross motion. However, it went further and also struck the fourth affirmative defense of usury interposed by defendants. In my view, the Special Term erred in dismissing the affirmative defense of usury. It is defendants' position on this appeal that the lease agreement was a subterfuge designed to mask, and serve as security for, a usurious loan to defendants in order to help the latter obtain the equipment from HB Electronics. If the lease was in fact security for a disguised loan, then the defense of usury could be interposed by defendants. In this regard, defendants cite several factors which may be gleaned from the papers and exhibits submitted at Special Term: 1. The value of the equipment actually leased is but a fraction of the $22,750 basic price set by the supplier; the greater part of the price is the cost of the labor to install the telephone and closed-circuit television system. Moreover, the television and telephone lines are installed in the walls of the partnership premises and constitute equipment which cannot be retrieved or be worth the money to retrieve. This fact appears to be inconsistent with certain language in the lease, i.e.: "No title or right to said equipment shall pass to Lessee * * * Upon the termination of the lease period, Lessee will immediately return said equipment to Lessor * * * Said equipment shall always remain and be deemed personal property even though attached to realty." 2. The acceleration clause in the agreement between plaintiff's assignor and the defendant is consistent with the concept of a loan but is inconsistent with the concept of a lease; in the latter instance, upon breach by the lessee, the lessor is entitled to recover the leasehold and any consequential damages resulting from the breach, but is not entitled to an automatic acceleration of the remaining monetary obligation of the agreement. To the extent that an acceleration clause is contained in an otherwise bona fide lease, it may be construed as a penal forfeiture which the law will not recognize (*Fairfield Lease Corp. v Marsi Dress Corp.*, 60 Misc 2d 363; *Nu Dimensions Figure Salons v Becerra*, 73 Misc 2d 140). 3. The agreement herein, by its very terms, indicates that the lessor was S. C. Funding Corp. and the supplier of the systems was HB Electronics. The total sum of rent payments to be paid under the agreement, i.e., $52,417.86, was to be paid to S. C. Funding Corp. and not the supplier, and far exceeded the true value of the equipment. These facts should be explored to ascertain whether the lease was meant to cover a transaction whereby S. C. Funding Corp. would make a loan to defendants by paying the purchase price of the systems to the supplier, and receive security for that loan in the form of a lease agreement. (Interestingly enough, it is alleged by defendants that S. C. Funding Corp. never paid anything to the supplier, HB Electronics.) 4. Defendants alleged, and it is not denied, that in an affidavit filed earlier in this action, the assistant manager of plaintiff stated that he considered the action as one to recover on a promissory note. With respect to defendants' argument, the case of *Benton v Sun Inds.* (277 App Div 46), cited by defendants, is extremely relevant. In *Benton,* plaintiffs bought a car from defendant seller Sun Industries for a net price of $1,224, which amount was advanced by the defendant Jefferson Credit Corporation, a finance company. Plaintiffs alleged that by reason of fraud and misrepresentation practiced by the seller, they signed a note and chattel mortgage under the terms of

which the price was not the $1,224 received by the seller and advanced by the finance company, but $1,980, or 62% in excess of that sum, to be paid off in installments of $110 each, which in one year totaled 40% of the actual sale price, alleged to be illegal interest on the sum advanced. The Special Term dismissed the complaint, apparently on the ground advanced by the ·defendants, i.e., that since the transaction was a sale, the increased amount to be paid by plaintiffs was made only because it was a sale on credit and that, accordingly, the usury laws were wholly inapplicable. The additional charges, argued defendants, were payments not for the sale of credit, but for a sale on credit, i.e., that the increase was for deferred payments and, therefore, legal. The Appellate Division in *Benton* (First Dept) reversed and held that it was error to dismiss the complaint. After stating that defendants had never denied the allegations of fraud, the court went on to hold that, even without any allegation of fraud, the defendants' motion had to be denied, stating (p 48): "There should be a trial, in any event, to elicit facts on the basis of which the court might conclude that it should look behind the mere form in which the transaction has been cast, and determine whether the substance of it was in effect not that the seller was to receive a greater price for the sale of the automobile on time rather than for cash, but that it was for the seller to realize the same amount of cash in either event and that the benefit of the increase in price was to go to the lender as an illegal bonus for its loan. If it was found that the terms of the transaction including the assignment of the chattel mortgage to Jefferson Credit Corporation had been agreed upon in advance of the sale of the automobile by the dealer to appellants, the court could hold that it was in reality a single transaction which contemplated from the beginning that the finance company would lend for the buyers the cash which they would otherwise have had to pay to the dealer, and that such transaction, in essence a loan to appellants, was infected with usury in its inception." (See, also, *Schneider v Phelps,* 41 NY2d 238.) Clearly, controlling authority in this State mandates that in determining whether a purported lease or sale arrangement involves a usurious loan, the trial court must look to the essential relationship of the parties and the substance of the transaction, rather than to one particular aspect of the transaction. For these reasons, I am of the view that the defendants are entitled to litigate at trial the issue as to whether the transaction was a bona fide lease of equipment, a conditional sale of property on credit, or a loan or security for a loan. It is upon the resolution of this issue that the affirmative defense of usury will ultimately stand or fall. Accordingly, the affirmative defense of usury should not have been stricken prior to trial.